**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **ELIZABETH S. HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:05-0508** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order filed June 24, 2005 (Doc. No. 4.),

this case was referred to the undersigned United States Magistrate Judge to consider the pleadings

and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all

pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-

Motions for Judgment on the Pleadings (Doc. Nos. 10, 12.) and Plaintiff's Reply. (Doc. No.13.)

The Plaintiff, Elizabeth S. Hall (hereinafter referred to as "Claimant"), filed an application

for SSI on May 2, 2002 (protective filing date), alleging disability as of January 1, 2002, due to

nervousness, anxiety, panic attacks, memory loss, Attention Deficit Disorder ("ADD"), Bipolar

Disorder, chronic diarrhea, stomach cramps, and vomiting.[1] (Tr. at 72-74, 83.) The claims were

---

[1] Claimant filed a prior application for benefits on October 14, 1999, which was denied initially and on reconsideration. (Tr. at 13.) On October 6, 2000, Claimant requested a hearing before an Administrative Law Judge, which hearing was held on July 12, 2001. (*Id.*) By decision dated September 18, 2001, the ALJ determined that Claimant was not entitled to benefits. (*Id.*) The Claimant did not file an appeal of that denial. (*Id.*)

denied initially and upon reconsideration. (Tr. at 25-27, 32-34.) On May 8, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 37.) The hearing was held on October 21, 2003, before the Honorable Karen B. Peters. (Tr. at 309-88.) A supplemental hearing was held on November 3, 2004. (Tr. at 264-308.) By decision dated January 25, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-23.) The ALJ's decision became the final decision of the Commissioner on May 9, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On June 23, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §416.920 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.

2

20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

3

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of Bipolar Disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and occasional gastrointestinal problems. (Id.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Id.) The ALJ then found that Claimant had a residual functional capacity to perform "work-related activities at all exertional levels with a moderate reduction in the ability to concentrate, a restriction to simple, unskilled tasks; she should avoid interaction with the general public, co-workers and supervisors and she should have access

5

to bathroom facilities." (Tr. at 21.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Id.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded, that Claimant could perform jobs such as a cleaner and laundry worker at either the light or medium level of exertion. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 22-23.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on April 4, 1980, and was 24 years old at the time of the supplemental administrative hearing. (Tr. at 21, 72.) Claimant had a high school education and received training as a certified nurse's assistant. (Tr. at 15, 89, 319.)

The Medical Record

  The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

  Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not considering (1) evidence of Claimant's panic disorder without agoraphobia and the impact it had on Claimant's condition, in violation of 20 C.F.R. § 416.920 (Doc. No. 11 at 3-4.) and (2) the testimony of Claimant's grandmother, in violation of 20 C.F.R. §§ 416.912, 416.913(d). (Id. at 4-5.) The Commissioner asserts that these arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Doc. No. 12 at 10-12.)

1. ALJ's Determination of RFC and Evaluation of the Evidence.

  First, Claimant argues that the ALJ made no findings with respect to the Axis I diagnosis of Panic Disorder Without Agoraphobia made by Mrs. Kelly Rush and Dale Rice; second, even if the ALJ's decision is supported by substantial evidence, the ALJ's failure to consider all the evidence pursuant to 20 C.F.R. § 416.920 requires reversal of the decision. (Doc. No. 11 at 3-4.) The Commissioner asserts that the ALJ discussed all the evidence, including the "oftentimes conflicting diagnoses of the physicians who examined [Claimant]." (Doc. No. 12 at 10.) The Commissioner further asserts that the ALJ properly analyzed Claimant's functional capacity, placing great weight on the functional capacity assessments rather than on a diagnosis. (Id.)

  At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p,

61 Fed. Reg. 34474, 34476 (1996).  Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job.  20 C.F.R. § 416.945(a)(4) (2004).  "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. § 416.927(e)(2) (2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

As previously noted, the ALJ in the instant decision determined that Claimant had the severe impairments of Bipolar Disorder, ADHD, and occasional gastrointestinal problems. (Tr. at 19.) After reviewing and considering the evidence of record, the ALJ concluded that Claimant retained the RFC to perform work at any exertional level, with a moderate reduction in her ability to concentrate and a restriction to simple, unskilled tasks. (Tr. at 21.) The ALJ further found that Claimant should avoid interaction with the general public, co-workers, and supervisors, as well as have access to bathroom facilities. (Id.)

The ALJ stated that she had considered all of the evidence of record in making her decision. (Tr. at 21, 22.) In the decision, the ALJ clearly noted medical evidence of the diagnosis of panic disorder without agoraphobia made by Mrs. Kelly Rush, M.A. (Tr. at 17.) Additionally, the ALJ

8

noted Claimant's complaints of panic attacks. (Tr. at 16, 17.) Mrs. Rush noted that Claimant experienced "unexpected fearful episodes characterized by breathing difficulty, heart palpitations, sweating, numbness, tingling sensations and shakiness." (Tr. at 155.) The episodes peaked within ten minutes. (Id.)

Claimant does not assert that she had functional limitation from the panic disorder without agoraphobia. To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2004). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. Id. § 416.921(b)(1)-(6). Claimant does not argue that this was a severe impairment; rather, she asserts that the ALJ failed to consider it in her decision pursuant to 20 C.F.R. § 416.920, which requires the ALJ to "consider all evidence in the case record when [she] make[s] a determination or decision whether you are disabled." 20 C.F.R. § 416.920(a)(3) (2004). As shown, the ALJ included this evidence in her discussion. Additionally, the ALJ properly reduced Claimant's residual functional capacity to the performance of simple, unskilled tasks, based on Claimant's mental condition, including her moderate inability to concentrate, and also required that she avoid interaction with the general public, co-workers, and supervisors. (Tr. at 21.) Accordingly, the undersigned finds that the ALJ's decision is in accordance with the Regulations and is supported by substantial evidence.

9

2. <u>ALJ's Consideration of Witness Testimony</u>.

Claimant next argues that the ALJ failed to take into account the testimony of Claimant's grandmother, Mrs. Donna Sue O'Neill, in violation of 20 C.F.R. §§ 416.912(a), (b) and 416.913(d). (Doc. No. 11 at 4-6.) The Commissioner asserts that the ALJ specifically noted that Mrs. O'Neill testified at the first hearing, and therefore, did not disregard her testimony. (Doc. No. 12 at 10.) The Commissioner further asserts that Mrs. O'Neill's testimony was cumulative of Claimant's and her mother's testimony, which the ALJ considered as incredible. (<u>Id.</u> at 10-11.)

Section 416.912(a) provides in part that the Commissioner "will consider only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. § 416.912(a) (2004). Evidence is defined as "anything you or anyone else submits to us . . . [including] (4) Information from other sources, as described in § 416.913(d)." 20 C.F.R. § 416.912(b) (2004). Evidence from other sources may be used to show the severity of a claimant's impairment and may come from "[o]ther non-medical sources (for example, spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. § 416.913(d)(4) (2004).

In her decision, the ALJ noted that Mrs. O'Neill appeared and testified at the initial administrative hearing. (Tr. at 14.) However, as Claimant asserts, the ALJ did not discuss the substance of Mrs. O'Neill's testimony or assign a specific weight accorded her testimony. Mrs. O'Neill testified that Claimant experiences episodes where she feels as if she is on top of the world, able to do most anything, including diagnosing Mrs. O'Neill's medical conditions. (Tr. at 380.) She described Claimant as very talkative, occasionally focused on cleaning, and as being unable to sleep during these episodes. (Tr. at 381-83.) Claimant and her mother, Ms. Tammy Mills, likewise testified as to Claimant's periods of "manic" or "hypomanic" behavior, characterized by talking,

cleaning, and the lack of sleep. (Tr. at 326-330, 364-67.) Mrs. O'Neill further testified that at other times, Claimant experienced period of depression, characterized by sitting, staring, and no talking. (Tr. at 384-85.) Similarly, Claimant and her mother testified that following a "manic" or "hypomanic" episode, Claimant stayed in bed and did not want to be around other people. (Tr. at 335-36, 369.) With respect to the ALJ's concern as to whether Claimant regularly took her prescribed medications, Mrs. O'Neill testified that although she did not actually see Claimant take them, she believed that she took her medications three times a day. (Tr. at 386.) Ms. Mills testified that she imagined there were days on which Claimant did not take her prescribed medication (Tr. at 374.), and Claimant testified at the supplemental hearing that she did not take Paxil for a period of one or two weeks, although it was prescribed. (Tr. at 286-87.)

Although the ALJ did not explicitly discuss Mrs. O'Neill's testimony, the undersigned finds that her testimony was cumulative of Claimant's and her mother's testimony, and therefore, the ALJ was not required to discuss specifically the substance of her testimony. See Sifers v. Barnhart, ___ F.Supp.2d ____, 2005 WL 4122736, * 9 (W.D. Va. June 1, 2005) (citing Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995)(finding that "although the ALJ failed to list specific reasons for discrediting the testimony of Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning his limitations."); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993)(per curiam)). In Sifers, the Western District Court of Virginia held that an ALJ's failure to evaluate specifically the credibility of Claimant's mother's and daughters' testimony was not error where the testimony was "essentially the same as plaintiff's own." Id. In Carlson, the Seventh Circuit Court of Appeals provided the following analysis in determining whether it is error for the ALJ not to

11

address specifically a witness's testimony:

> We have repeatedly stated that the ALJ need not evaluate in writing every piece of testimony and evidence submitted. Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985); Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984). What we require is that the ALJ sufficiently articulate his assessment of the evidence to "assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." Stephens, 766 F.2d at 287. If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required. Zblewski, 732 F.2d at 78-79. But this is not such a case. The ALJ explicitly addressed Carlson's testimony concerning his pain and daily activities. Mrs. Carlson's testimony was essentially redundant. This is not like other cases where, because the ALJ failed to consider an entire line of evidence, we concluded that he provided insufficient reasons. *See* Young v. Secretary of Health and Human Services, 957 F.2d 386, 392 (7th Cir. 1992) (failure to discuss claimant's testimony, his wife's affidavits, or the reports of three doctors); Stein v. Sullivan, 892 F.2d 43, 47 (7th Cir. 1989) (failure to discuss any of the relevant medical evidence from claimant's treating physician); Halvorsen v. Heckler, 743 F.2d 1221, 1226 (7th Cir. 1984) (failure to discuss claimant's uncontradicted testimony). The ALJ did not err by failing to disclose Mrs. Carlson's testimony explicitly.

Carlson, 999 F.2d. at 181.

In the instant case, the ALJ explicitly addressed Claimant's and her mother's testimony and found that the testimony was not credible. (Tr. at 15-16, 20.) The ALJ found that Claimant's complaints were "not fully persuasive" and hers and Ms. Mills's testimony appeared to be based on "a considerable degree of financial motivation." (Tr. at 20.) The ALJ noted that Claimant's counsel's questions to Claimant and Ms. Mills were leading and were "intended solely for the purpose of obtaining benefits and very little information was given to indicate the claimant was actually unable to function." (Id.) The ALJ also noted that Ms. Mills receives social security disability for mental reasons and that Mrs. O'Neill also receives disability benefits. (Tr. at 16.) It is apparent from her decision that the ALJ was perplexed by Claimant's testimony that her condition had not improved with medication and her treating psychiatrist's notes that she was doing well on the prescribed medicine. (Tr. at 20.) The ALJ thus opined that Claimant "apparently either [has] not complied with

12

treatment recommendations, gone wild, and then lied to or withheld information from her psychiatrist about compliance, or, according to his brief notes, is actually doing quite well on the medications prescribed." (Tr. at 20.) Based on the testimony and medical records, the ALJ concluded that Claimant had not been compliant at times with her medication and refused to engage in counseling sessions which were vital to her treatment according to "her treating physicians, her mother and her own self indications of abnormal behavior." (Tr. at 20.)

Based on the foregoing, the undersigned finds that Mrs. O'Neill's testimony was cumulative of Claimant's and Ms. Mills's testimony. The ALJ's failure to discuss specifically the substance of Mrs. O'Neill's testimony did not result in the ALJ's failure to consider an entire line of evidence. It is clear that a discussion of Mrs. O'Neill's testimony would not have added anything to the ALJ's analysis. Accordingly, remand to require further evaluation of Mrs. O'Neill's cumulative testimony is not warranted. The undersigned finds that the Commissioner's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and

Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: November 8, 2006.

R. Clarke VanDervort
United States Magistrate Judge